[No. 58811-7-I. Division One. February 11, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TELLAS ORLANDO BOOKER, *Appellant*.

*Dana M. Lind* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine, Charles F. Blackman*, and *Mary K. Webber, Deputies*, for respondent.

¶1 AGID, J. — Tellas Booker pled guilty to two counts of assaulting a police officer, and the superior court determined he had an offender score of six based on his criminal history. Booker challenges his offender score, contending the State failed to prove that his 1994 Illinois conviction for illegal possession of a firearm by a felon is comparable to a Washington felony. The State cross-appeals, arguing that the court improperly excluded two 2000 Illinois drug convictions from the offender score calculation because the record was silent about whether Booker was represented or waived his right to counsel. Because the 1994 Illinois information specifically accused Booker of illegally possessing a firearm after being convicted of a felony and Booker presents no affirmative evidence to suggest he was convicted of an offense other than the one with which he was charged, we hold that the State met its burden of proving by a preponderance of the evidence that Booker was convicted of a crime comparable to possession of a firearm by a felon in Washington. But we reverse the superior court's decision to exclude the two 2000 drug convictions from Booker's offender score because the State is not required to prove that he was represented by counsel.

## FACTS

¶2 Booker entered *Alford*[1] pleas to two counts of assaulting a police officer but disputed his out-of-state criminal history. At sentencing, the parties argued about which prior out-of-state convictions could properly be included in his offender score. Booker objected to the State's offer of documents other than judgment and sentences to prove his prior

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Illinois convictions. He challenged their inclusion, arguing that they were facially invalid because they did not show that he was represented by counsel and were not comparable to Washington offenses. The trial court agreed and excluded Booker's 2000 convictions because there was insufficient evidence in the record showing that he had been represented by counsel at the time of those convictions. But it considered his other convictions, including a disputed 1994 Illinois conviction for illegal possession of a firearm by a felon. Based on these prior out-of-state convictions, the court determined that Booker's offender score was six and sentenced him within the standard range.

## DISCUSSION

### I. Comparability

¶3 We review an offender score de novo unless it involves factual or discretionary determinations.[2] For sentencing purposes, the State bears the burden of proving the existence of a prior conviction by a preponderance of the evidence.[3] The Sentencing Reform Act of 1981, chapter 9.94A RCW, provides that prior out-of-state convictions shall be considered in determining an offender score "according to the comparable offense definitions and sentences provided by Washington law."[4] To determine legal comparability, a court compares the elements of the out-of-state crime with the elements of the potentially comparable Washington crime.[5] When the elements of the two crimes are not substantially similar, a court may consider the defendant's conduct, as evidenced by the indictment or

---

[2] *State v. Winings*, 126 Wn. App. 75, 91, 107 P.3d 141 (2005) (citing *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002), *review denied*, 149 Wn.2d 1006 (2003)).

[3] *State v. McCorkle*, 88 Wn. App. 485, 492, 945 P.2d 736 (1997) (citing *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986)), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999).

[4] RCW 9.94A.525(3).

[5] *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005) (citing *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998)).

information, to determine whether the out-of-state conviction is factually comparable to a Washington conviction. If it is, the defendant's conduct would have violated the comparable Washington statute and the conviction is included in the offender score.[6]

¶4 At sentencing, the State presented certified copies of the order of sentence and commitment to Illinois Department of Corrections, the statement of conviction/disposition, and the information filed in Booker's prior firearm case to prove that his Illinois firearm conviction was comparable to a violation of RCW 9.41.040(2), the Washington statute that makes it a felony for a felon to possess a firearm. The information from Booker's prior conviction charged him with a violation of chapter 720, act 5, section 24-1.1 of the Illinois Compiled Statutes (720 ILCS 5/24-1.1) for knowingly possessing a firearm after having been convicted of a felony. The order of sentence and commitment shows a conviction for the same case number.

¶5 Booker argues that the documents presented by the State are insufficient to prove his Illinois firearm conviction was comparable to a Washington felony. First, he correctly asserts that 720 ILCS 5/24-1.1 is not legally comparable to RCW 9.41.040(2) because it criminalizes the possession or use of other weapons in addition to firearms. Next, he argues that the State failed to prove factual comparability, despite presenting the information explicitly charging Booker with possession of a firearm, because the handwritten portion of the order of sentence and commitment stated that Booker was convicted of "Unlawful Use Firearm/Felon Ch. 720-5 Sec. 24-1. Par. 1."[7] He claims that this could be read to show a conviction for a violation of 720

---

[6] *Id.*

[7] Part of Booker's argument is that "Felon" is illegible. It looks like "Teton." No reasonable person reading the document could conclude that the writer intended to write "Teton" instead of "Felon."

ILCS 5/24-1 instead of a violation of 720 ILCS 5/24-1.1.[8] He contends this reading is bolstered by evidence in the statement of conviction/disposition that he was arraigned twice, arguing that perhaps an amended information was filed charging a violation of 720 ILCS 5/24-1 paragraph 1, a misdemeanor offense involving the use or possession of a variety of weapons other than a firearm, instead of the original firearm charge.

¶6 This argument is based on pure speculation. Nothing in the record suggests an amended information was filed. The more reasonable inference from the evidence is that any discrepancies between the information and the order of sentence and commitment were scrivener's errors rather than a legitimate reference to paragraph 1 of 720 ILCS 5/24-1 because the conviction specifically refers to the unlawful use of a firearm. Paragraph 1 of 720 ILCS 5/24-1 does not deal with firearms, and no period would be necessary after the 1 if the writer had not intended another 1 to come after it. If the standard of proof were beyond a reasonable doubt, Booker's argument might have merit. But, in the absence of any evidence to the contrary, we conclude that the State met its burden of proving by a preponderance of the evidence that Booker was convicted of a crime comparable to possession of a firearm by a felon in Washington.

## II. Constitutional Validity of 2000 Convictions

¶7 "[T]he State does not have the affirmative burden of proving the constitutional validity of a prior conviction before it can be used in a sentencing proceeding."[9] While the sentencing court cannot consider a prior conviction that is constitutionally invalid on its face,[10] a

---

[8] Although Booker did not make this precise argument below, a challenge to the classification of an out-of-state conviction may be raised for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 484-85, 973 P.2d 452 (1999).

[9] *Ammons*, 105 Wn.2d at 187.

[10] *Id.* at 187-88.

conviction that is merely silent about whether a defendant's rights were protected is not facially invalid.[11]

> The conviction need not show that a defendant's rights were not violated; rather, for the conviction to be constitutionally invalid on its face, the conviction must affirmatively show that the defendant's rights *were* violated.[12]

To require otherwise "would turn the sentencing proceeding into an appellate review of all prior convictions."[13] In *State v. Marsh*, we held a conviction that does not show representation by counsel or waiver is constitutionally invalid on its face.[14] But the Washington Supreme Court explicitly disagreed with *Marsh* in *In re Personal Restraint of Williams*:

> To the extent that *Marsh* holds or suggests that the State must prove the constitutional validity of prior convictions at a sentencing hearing, it contravenes our previous holding in *Ammons*.[15]

¶8 Here, the State presented the informations and statements of conviction/disposition for two separate 2000 Illinois felony drug convictions as proof of prior offenses to be included in Booker's offender score. Although these documents do not indicate whether counsel was appointed or waived for either matter, they also do not affirmatively show that Booker's right to counsel was denied. Thus, the documents do not suggest that the conviction is constitutionally invalid on its face. But the sentencing court found this evidence insufficient to prove Booker had two prior drug felonies. This finding is contrary to the Supreme Court's holding in *Williams* because it impermissibly requires the State to prove the constitutionality of the prior

---

[11] *State v. Gimarelli*, 105 Wn. App. 370, 375, 20 P.3d 430 (citing *Ammons*, 105 Wn.2d at 189), *review denied*, 144 Wn.2d 1014 (2001).

[12] *Id.* (emphasis added).

[13] *Ammons*, 105 Wn.2d at 188.

[14] 47 Wn. App. 291, 295, 734 P.2d 545 (1987).

[15] 111 Wn.2d 353, 368, 759 P.2d 436 (1988).

convictions at a sentencing hearing in the absence of any facial invalidity.

¶9 Booker argues that we should read *Williams* more narrowly, not as overruling *Marsh*, but rather as an attempt to harmonize *Marsh* and *Ammons*.[16] He asks this court to focus instead on *Burgett v. Texas*,[17] the United States Supreme Court case on which *Marsh* relied. In *Burgett*, the Supreme Court held that a jury could not consider a prior conviction in the absence of evidence that the defendant was represented by or waived his right to counsel.[18] But *Burgett* can be distinguished on four grounds.

¶10 First, in *Burgett*, the conviction was offered to prove the defendant was an habitual criminal.[19] Habitual criminal proceedings, unlike the determination of an offender score, require proof beyond a reasonable doubt.[20] Given the burden of proof, it makes sense in that context to require proof of constitutional regularity from the State.

¶11 Second, the prior conviction at issue in *Burgett* was obtained before *Gideon v. Wainwright*[21] established the constitutional right to appointed counsel for the indigent,[22] making a presumption that the defendant had not been appointed counsel more appropriate than it would be under our current system, where public defenders are routinely appointed. In *United States v. Cline*, the Sixth Circuit distinguished *Burgett* for the same reason, rejecting the idea that it created a presumption of facial invalidity where the record is silent about whether a defendant had repre-

---

[16] *Ammons*, 105 Wn.2d 175.

[17] 389 U.S. 109, 114-15, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967).

[18] *Id.*

[19] *Id.* at 111.

[20] *State v. Holsworth*, 93 Wn.2d 148, 160, 607 P.2d 845 (1980).

[21] 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[22] *Burgett*, 389 U.S. at 114-15.

sentation.[23] The *Cline* court explained that the Supreme Court has since limited the reach of *Burgett* to convictions obtained before the right to appointed counsel was established.[24]

¶12 Third, the facts in *Burgett* are far more suggestive of invalidity than the facts of this case. In *Burgett*, there were two different documents submitted to prove the same conviction.[25] One specified that *Burgett* was not represented.[26] The other was silent.[27] The court admitted the document that was silent, even though there was another document that affirmatively proved invalidity.[28] Here there is mere silence. Nothing in the record affirmatively suggests Booker was unrepresented. In fact, one of the docket entries states that there was a cash bond refund to an attorney, suggesting that Booker was represented. Booker points to the fact that there are docket entries from his other Illinois convictions showing that counsel was appointed. But the absence of such an entry for his 2000 drug convictions does not suggest that he was unrepresented. Rather, given the reference to an attorney receiving the cash bond refund, it suggests he was represented by a private attorney rather than a public defender. In that case, no formal appointment of counsel on the record would have been necessary. Thus, we cannot say this silence is suffi-

---

[23] 362 F.3d 343, 351 (6th Cir. 2004) (citing *Parke v. Raley*, 506 U.S. 20, 31, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992)). The parties spend a great deal of time discussing the effect of *Parke* on the holding in *Burgett*. But *Parke* is not directly on point because it is a case about when waiver of a constitutional right can be presumed. In *Parke*, the issue was whether a conviction based on a guilty plea could be presumed valid in the absence of affirmative evidence that the defendant knowingly and voluntarily waived his trial rights. 506 U.S. at 30-31. In contrast, here, there is no need to discuss waiver because there is no affirmative evidence that Booker was denied his right to counsel.

[24] *Cline,* 362 F.3d at 351.

[25] *Burgett*, 389 U.S. at 112.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 113.

cient to support a claim that the conviction is facially invalid.

¶13 Fourth, *Burgett* and *Marsh*, which cites *Burgett* to establish a presumption of invalidity for prior convictions that do not indicate the presence or waiver of counsel,[29] both rely on *Carnley v. Cochran*.[30] But *Carnley* does not stand for the proposition that a court should presume absence of counsel from a silent record. *Carnley* merely states that, where there is affirmative evidence that a defendant was not represented and the record is silent about whether the defendant waived counsel, waiver cannot be presumed.[31] Here, Booker presented no affirmative evidence that he was not represented by counsel. At a minimum, in order to create a question about the validity of the conviction, Booker should have provided an affidavit stating that he was unrepresented at the time of the prior convictions.[32] Thus, we hold that the State met its burden by proving the existence of the 2000 convictions by a preponderance of the evidence and, in the absence of facial constitutional invalidity, the trial court erred by excluding those convictions from Booker's offender score.

¶14 We affirm the superior court's inclusion of Booker's firearm conviction in his offender score because it is comparable to a Washington offense. And we reverse the court's decision to exclude the two 2000 drug convictions because the State proved their existence by a preponderance of the evidence and it need not prove that Booker was represented by counsel in the absence of any facial constitutional invalidity. The case is remanded to the trial court for resentencing.

ELLINGTON and LAU, JJ., concur.

---

[29] *Marsh*, 47 Wn. App. at 293.

[30] 369 U.S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962).

[31] *Id.* at 516.

[32] *See Ammons*, 105 Wn.2d at 190 (holding that the identity of names is sufficient to prove the defendant is the person named in the prior conviction, unless the defendant declares under oath that he is not that person).